**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

MIRJAM LETSCH,

        *Plaintiff*,

   v.

SOUTHERN PROPER HOSPITALITY
GROUP, LLC, et al.,

        *Defendants*.

Civil Action No. 21-1840 (TJK)

---

<u>**MEMORANDUM OPINION & ORDER**</u>

Gypsy Kitchen, a restaurant in Atlanta, wanted to use one of Mirjam Letsch's photos as a mural in its dining room. So it paid her for a license permitting that use. Problems arose, though, when Letsch realized that Gypsy Kitchen had not stopped there. Instead, Gypsy Kitchen had also used the photo in a newly opened D.C. location and in digital-advertising materials. Letsch sued for copyright infringement, and the parties eventually cross-moved for summary judgment. The Court granted and denied each motion in part. Using the photo in the D.C. restaurant exceeded the scope of the license, which did not permit displaying the photo in that location or using images of that display in digital marketing. But displaying the photo in the Atlanta restaurant and using it in promotional materials for that location fell within the license's scope. Disagreeing with the Court's holding on the Atlanta restaurant's promotional materials, Letsch moved for reconsideration.

The Court has reconsidered that holding and finds that genuine disputes of material fact prevent summary judgment on whether marketing materials using the image in the Atlanta restaurant infringed Letsch's copyright. A jury could find that the original license did not authorize those uses. Nor is it beyond reasonable dispute that Letsch's social-media activity granted an

implied license permitting the Atlanta-based marketing uses.  Thus, summary judgment was inap-

propriate on this issue.  And because "[w]isdom too often never comes," the Court will not "reject

it merely because it comes late."  *Henslee v. Union Planters Nat'l Bank & Tr. Co.*, 335 U.S. 595,

600 (1949) (Frankfurter, J., dissenting).  So the Court will grant Letsch's motion for reconsidera-

tion.

## I.     Background

The Court's Memorandum Opinion addressing the summary-judgment motions offers de-

tailed background about this case, *see* ECF No. 45, so an overview is enough here.  Mirjam Letsch

has worked as a professional photographer for about twenty years.  ECF. No. 39-1 ¶ 29.  In 2007,

she took a photograph of "a woman from the Bhopa tribe in the Indian desert state of Rajasthan,

drinking chai (traditional masala tea)."  *Id.* ¶¶ 1–2.



ECF No. 1-1.

About seven years later, Southern Proper Hospitality Group, LLC ("Southern Proper")—

an Atlanta-based owner and operator of nearly two dozen restaurants—started planning a new

Atlanta restaurant called "Gypsy Kitchen."  ECF No. 39-1 ¶¶ 4, 31.  The company hired an

architecture firm to design the restaurant, and that firm found Letsch's photograph on her website. *Id.* ¶¶ 5–6. In early 2014, one of the architecture firm's employees emailed Letsch about buying a digital version of the photo to use "as a permanent large feature (wall mural)." *Id.* ¶ 7; ECF No. 33-7. Letsch asked for more details and learned about the firm's client that wanted to use the image "in a restaurant" as "a large mural"—about 14 feet by 14 feet—"on one of the[] dining room walls." ECF Nos. 33-8, 33-9.

After this exchange, Letsch talked deal terms. "If you use the photo only for the 'mural' as specified by you," she wrote, "I can offer you the (model released) photo at €1000." ECF No. 33-11. "No problem," the architecture firm replied. ECF No. 33-12 at 1. As for "grant[ing] the license," Letsch explained that she could provide it in "[w]hatever" form "is convenient." ECF No. 33-13 at 1. She also had a "model release"—*i.e.*, an agreement signed by the subject of a photograph "granting permission to publish or sell the photograph in one form or another"—from the photographed woman that she could send too. *Tharpe v. Lawidjaja*, 8 F. Supp. 3d 743, 779 (W.D. Va. 2014); ECF No. 13-13 at 1. With these details worked out, Chris Hadermann (Southern Proper's managing partner) sent Letsch €1,000 via PayPal. ECF No. 33-15. The invoice for the payment included the following note: "PHOTO TO BE USED FOR RESTAURANT MURAL (ONLY)." ECF No. 33-17. But "[f]or all other use," it stated, "please contact [Letsch] first." *Id.*

Gypsy Kitchen opened its doors and began using pictures of the mural in social-media posts and marketing materials. For example, the cover photo of the restaurant's Facebook page was a picture of the dining room with the mural. *See* ECF No. 37-26 at 9–11. And a promotional email for a special one-year-anniversary celebration used a zoomed-in image of the photographed woman along with pictures of the restaurant, drinks, and food. *Id.* at 8.

By 2019, Southern Proper was planning to open another Gypsy Kitchen restaurant in Washington, D.C.  ECF No. 39-1 ¶ 92.  Working with the design firm RDStudio this time, Hadermann emailed the Atlanta architecture firm to ask about the mural in the original restaurant.  ECF No. 37-9 at 3.  Southern Proper wanted to use that mural—or, more precisely, the image that became the mural—"again for DC."  *Id.*  But Southern Proper was "unsure if [it] could" do that under the original deal with Letsch.  *Id.*  In response, the Atlanta firm sent "two documents" that led it "to believe we might need to reach out . . . again to license it for another location."  *Id.* at 2.

RDStudio did just that.  It emailed Letsch, explained that it was "working on a restaurant in DC with Southern Proper Hospitality," and asked if it could "use the image again for the new location" given the previous "permission" to "use the image for mural use only."  ECF No. 33-27 at 1.  Letsch and the firm's representative exchanged emails and appeared to agree on a price of €1,200 for permission to use the photo in Gypsy Kitchen D.C.  *See* ECF No. 37-14 at 2–7.  But RDStudio suddenly stopped responding, which prompted follow-up from Letsch: "You haven't paid the invoice, have not cancelled, nothing.  Please let it be clear that my photo cannot be used in any way in another project.  Not as as [*sic*] mural, not in print or digital."  ECF No. 37-15 at 2.  RDStudio forwarded that email to Hadermann, writing that: "You've asked us to ignore her invoice and stop communication with her since you felt that the image was already purchased by [Southern Proper] and in your original terms with her it didn't explicitly state that you couldn't reproduce the image."  ECF No. 37-17.  Hadermann then emailed Letsch that "we have already paid you for the licensing and use of this image for our Gypsy Kitchen concept."  ECF No. 37-16 at 3.  Letsch responded that they had no agreement; the original license was "only for mural use in one restaurant"—"[n]ot for any other purpose, nor for new locations."  *Id.* at 2.  Undeterred, Southern Proper eventually created the mural without a new licensing agreement and displayed it in the D.C.

4

restaurant beginning in August 2020.  ECF No. 39-1 ¶¶ 94–97, 127.  But after Letsch's counsel sent a cease-and-desist letter in March 2021, Gypsy Kitchen D.C. removed the mural two months later.  *Id.* ¶¶ 96–97.

In July 2021, Letsch sued four parties for copyright infringement: Southern Proper, Hadermann, RDStudio, and ABC Imaging of Washington, Inc.[1]  *See* ECF No. 1 at 1–3, 8–11.  After completing discovery, Letsch and Defendants cross-moved for summary judgment.  *See* ECF Nos. 33, 35, 36.  The motions hinged on whether Defendants' uses of Letsch's photo fell within the scope of the license that Letsch granted.  In turn, that question raised two subsidiary issues: what was the scope of the license, and which—if any—of Defendants' uses exceeded that scope?

After finding that "Letsch granted a license for her photo to be used only once as a mural in a single restaurant," the Court held that only some of Defendants' uses overstepped that boundary.  ECF No. 45 at 12.  Displaying the photo in the D.C. restaurant infringed Letsch's copyright because the license permitted Defendants to use the image in *one* restaurant—Gypsy Kitchen Atlanta—but not others.  *See id.* at 15–16.  So too for Defendants' use of that display in other materials.  *See id.*  The "allegedly improper uses at the Atlanta location," however, were "trickier."  *Id.* at 16.  Starting with the uses of "photo[s] of the mural in advertising" that also "show[ed] the interior of the Atlanta restaurant," the Court found that the license "contemplated" such "incidental uses" of Letsch's copyrighted work.  *Id.*  Some uses, though, included "the mural—or a portion of it—[]as a more specific focal point."  *Id.* at 18.  Yet even if these uses were "outside the scope of the initial license," Letsch ratified them with "an implied license."  *Id.* at 19.

---

[1] In November 2021, the Clerk entered default against ABC Imaging of Washington, Inc. ECF No. 25.  This defendant was not a party to the cross-motions for summary judgment and is not a party in the request for reconsideration of the Court's ruling on those motions.  So the Court's use of "Defendants" excludes ABC Imaging of Washington, Inc.

She did so, the Court held, by posting the copyrighted photo on her Instagram account in March 2020 and explaining that it "was used as a mural in" Gypsy Kitchen Atlanta. ECF No. 33-20 at 1. Her caption also included two links: one to the Atlanta restaurant's Instagram page and another to her "Behance" profile, which included an image of the mural within the restaurant. *Id.*; ECF No. 33-21 at 3–5. Based on that conduct, the Court found that Letsch "showed that she did not object" to Defendants' uses of the photo in "promotional materials and digital marketing" for the Atlanta location. ECF No. 45 at 19. So it granted summary judgment to Defendants on this issue, holding that these uses did not infringe Letsch's copyright. *Id.* at 20.

Letsch moved for reconsideration of this aspect of the Court's ruling. *See* ECF Nos. 47–48. Although focusing on the Court's implied-license ruling based on her social-media activity, *see, e.g.*, ECF No. 48 at 7–10, Letsch broadened her challenge in her reply. There, she argued that a genuine dispute of material fact precluded summary judgment on whether all of Defendants' Atlanta-based digital-marketing uses fell within the scope of the license. *See* ECF No. 52 at 6–7. This argument is more sweeping than, but still conceptually related to, Letsch's original challenge. So the Court permitted Defendants to file a surreply addressing it. *See* ECF No. 53. They did, *see* ECF No. 54, and Letsch's motion is now ripe for decision.

## II.    Legal Standard

The Court may revise an interlocutory order "any time before the entry of judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). Typically, courts will "grant a motion for reconsideration of an interlocutory order only when the movant" shows that (1) the law has changed, (2) previously unavailable evidence has surfaced, or (3) the court clearly erred in its initial ruling. *Klayman v. Jud. Watch, Inc.*, 296 F. Supp. 3d 208, 213 (D.D.C. 2018). Such clear error might exist when the Court "patently misunderstood the parties" or "strayed far afield of the issues presented." *Est. of Gaither ex rel. Gaither v. District of*

*Columbia*, 771 F. Supp. 2d 5, 9 (D.D.C. 2011) (citation omitted).  And although these motions are

not vehicles "to reargue facts and theories" that the Court has already ruled on, *id.* (citation omit-

ted), the Court has "inherent power to reconsider an interlocutory order 'as justice requires,'" *Cap-*

*itol Sprinkler Inspection, Inc. v. Guest Servs., Inc.*, 630 F.3d 217, 227 (D.C. Cir. 2011) (citation

omitted).  The bottom line is that the Court may grant relief when "good reasons" exist "for doing

so," *Cobell v. Norton*, 355 F. Supp. 2d 531, 540 (D.D.C. 2005)—in other words, when relief is

"necessary under the relevant circumstances," *Est. of Gaither*, 771 F. Supp. 2d at 9.

## III.    Analysis

The Court clearly erred because it granted summary judgment to Defendants on an issue

even though genuine disputes of material fact existed.  To begin, the Court correctly held that the

scope of the license was narrow and "limited Defendants' use of [Letsch's] photograph to one

mural in one restaurant."  ECF No. 45 at 10.  But the Court then invaded the province of the jury

by holding that Defendants' use remained within that scope when they used the photo in digital

advertising for the Atlanta location.  *Id.* at 16–20.  To be sure, Defendants may ultimately prevail

on that point.  But for them to win at summary judgment, the Court must find that "no reasonable

jury could" side with Letsch.  *Sturdza v. United Arab Emirates*, 281 F.3d 1287, 1297 (D.C. Cir.

2002).  And that finding was a clear error in the Court's previous ruling that warrants relief under

Rule 54(b).

Begin with the scope of the license—a necessary baseline for assessing whether Defend-

ants' uses exceeded it.  Because "the existence of the license is undisputed," Letsch—"the copy-

right owner"—must show that Defendants' "conduct was unauthorized under the license."  *Smith*

*v. Barnesandnoble.com, LLC*, 839 F.3d 163, 167 (2d Cir. 2016).  The "essence of a license," in-

cluding its scope, is the "owner's *grant of permission* to use the material."  *MidlevelU, Inc. v. ACI*

*Info. Grp.*, 989 F.3d 1205, 1216 (11th Cir. 2021).  That holds true whether the license is express

or implied. After all, "an implied license"—no less than an express license—"to use a copyrighted work cannot arise out of the unilateral expectations of one party." *Jose Luiz Pelaez, Inc. v. McGraw-Hill Educ. Holdings LLC*, 399 F. Supp. 3d 120, 142 (S.D.N.Y. 2019) (internal quotation marks and citation omitted). So "the question of implied license" boils "down to whether" the parties had a "meeting of the minds" to "permit the particular usage at issue." *Id.* (citation omitted). And that agreement turns on their "objective intent." *Id.*

Applying these principles, the Court correctly defined the scope of the license that Letsch granted. Time and again, the parties' conduct showed that they understood the license as limited to use of the photo *as a mural* in the Atlanta restaurant. One of Southern Proper's agents told Letsch that her photo would be "include[d] . . . as a large mural" on a wall "in a restaurant . . . in Atlanta Georgia." ECF No. 33-9. In a "clarify[ing]" email, the agent explained that the photo would be "use[d] . . . only once as a large format vinyl print" that will be "'mural' size" on the wall. ECF No. 33-10. Neither email mentioned using the photo in marketing materials. And Letsch's invoice confirmed this limited scope by specifying—in prominent capital letters—that the "photo" was "to be used for restaurant mural (only)." ECF No. 33-17. "For all other use: please contact [Letsch] first." *Id.* This invoice, the Court held, "shows the same thing" as the pre-agreement email exchanges: the "parties agreed on a *limited* license to use Letsch's photo *one time* in a single restaurant." ECF No. 45 at 10 (emphases added). That one-time use was also limited; Defendants could use Letsch's photo "only . . . as a mural" in Gypsy Kitchen's Atlanta location. *Id.* at 12.

That Letsch "licensed certain rights to [her] copyright . . . does not prohibit" her "from bringing an infringement action" if she "believes the license is exceeded or the agreement breached." *Janik v. SMG Media, Inc.*, No. 16-cv-7308 (JGK/AJP), 2018 WL 345111, at *9

(S.D.N.Y. Jan. 10, 2018) (quoting *Tasini v. N.Y. Times Co.*, 206 F.3d 161, 170 (2d Cir. 2000)). Rather, when a licensee "exceed[s] the specific purpose for which the license was granted," he "violates the scope of [the] copyright license." *Boatman v. U.S. Racquetball Ass'n*, 33 F. Supp. 3d 1264, 1271 (D. Colo. 2014). The Court held that Defendants had not done so by using Letsch's photo in digital marketing for the Atlanta location. "[T]here is no genuine dispute" that the license "contemplated certain incidental uses of the photo," the Court reasoned, including use in some marketing materials. ECF No. 45 at 16.

But to support that holding, the Court relied mainly on what it viewed as a "conce[ssion]" about the license's coverage of certain marketing uses. ECF No. 45 at 16. Letsch, responding to a question about whether she thought Defendants could publish a photo of the restaurant "that included a depiction of the image in question," testified in 2022 that she "would understand" if Defendants published "an image of the entire interior of the restaurant." ECF No. 33-5 at 17. And in her cross-motion, she acknowledged that this deposition testimony showed that she "generally *would not object* to the incorporation of [her] Photograph as part of a larger image showing the" restaurant's "interior." ECF No. 36 at 34–35. The Court understood the testimony and briefing to concede that "the license naturally permitted Defendants to use a photo of the mural in advertising" so long as the ad also showed the restaurant's interior. ECF No. 45 at 16.

The evidence, considered more closely, did not support that finding. For one thing, Letsch did not "concede" that the license covered Defendants' marketing uses. She also testified, for example, that she believed "any use of" her photo "in advertising material is outside the scope of the license." ECF No. 33-5 at 17. And she contended in her cross-motion that "not objecting to certain limited uses . . . does not equate to an affirmative, 'implied license' for *all* digital promotion/advertising uses by Defendants." ECF No. 36 at 35. So Letsch's understanding of the license,

upon reconsideration, was much less clear and did not show a lack of disputed material fact on this point.

For another, Letsch's deposition testimony and briefing reflect (at most) her after-the-fact understanding, which does not show that the parties had a "meeting of the minds" about whether the license "permit[ted] the particular usage[s]." *Jose Luiz Pelaez*, 399 F. Supp. 3d at 142 (citation omitted). Defendants deposed Letsch in 2022—eight years after the parties discussed the photo and agreed to the license, and also after at least some of the allegedly infringing uses. *See, e.g.*, ECF No. 37-25 at 2 (screenshot appearing to show February 2021 date); ECF No. 37-26 at 2 (same); ECF No. 37-27 at 2–5 (social-media ads from 2020). So her "belated statement" that she would understand certain uses does not "negate all other objective manifestations of intent" from the parties' back-and-forth in 2014. *Asset Mktg. Sys., Inc. v. Gagnon*, 542 F.3d 748, 757 (9th Cir. 2008). What matters is how the parties "objectively manifested" their intent "in what they have communicated *to one another*"—not "their unexpressed subjective intent." *Pargar, LLC v. CP Summit Retail, LLC*, 730 S.E.2d 136, 141 (Ga. App. Ct. 2012) ("deposition testimony" was "immaterial" because it "pertained to" a party's "unexpressed subjective intent"); *see also* ECF No. 45 at 8 (agreeing with the parties that Georgia contract law applies). And Defendants did not explain at summary judgment—nor have they explained now—how this aspect of Letsch's 2022 deposition testimony was objectively manifested when the parties negotiated the license or even when Defendants used the photo in the allegedly infringing ways. Letsch's after-the-fact claims about what she "would understand" does not necessarily show that the license—which the Court determined covered only Defendants' use of the photo *as a mural*—also covered Defendants' uses in marketing materials. ECF No. 33-5 at 17.

Letsch, then, did not concede that "the license naturally permitted Defendants to use a photo of the mural in advertising." ECF No. 45 at 16. And without that concession, whether Defendants' digital-marketing uses for the Atlanta restaurant "exceeded the scope of the . . . license"—express or "implied"—is "a question of material fact" precluding summary judgment. *Teter v. Glass Onion, Inc.*, 723 F. Supp. 2d 1138, 1154 (W.D. Mo. 2010). Put another way, a reasonable jury could find that using the photo in certain promotional materials goes beyond using it "as a mural in a single restaurant." ECF No. 45 at 12. For example, did Defendants use the photo "as a mural" by promoting event-planning opportunities with a picture including the photographed woman?



ECF No. 37-24 at 2. And what about advertising an event with a zoomed-in image of the photo that does not show it on the restaurant wall—in Letsch's words, a "decontextualized" use? ECF No. 48 at 7.



ECF No. 37-26.  These questions, which require assessing whether specific uses in particular contexts fit within the license's scope, "must be resolved by a jury."  *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1238 (11th Cir. 2010) (reversing grant of summary judgment because of "genuine issues of material fact" about whether certain uses "exceeded the scope of the license").

Nor do these genuine factual disputes disappear just because the Court defined the scope of the license.  For example, in *Latimer*, the Eleventh Circuit identified the following as a "genuine issue[] of material fact": whether distributing copyrighted "photographs in digital format" might "have exceeded the scope of [a] license," even if the license covered distributing the photos "to the media in a printed flyer."  601 F.3d at 1238.  So the court held that jury questions—specifically, whether particular uses aligned with a defined license—precluded summary judgment.  *See id.* And even if the license here "contemplated certain incidental uses of the photo," that does not show a lack of factual disputes about whether Defendants' *particular* uses fall with license's scope—*i.e.*, use of the photo as a mural.  ECF No. 45 at 16.

Or consider *Boatman v. United States Racquetball Association*.  There, a photographer granted several licenses to the defendant but argued that each prohibited anything beyond "editorial use."  33 F. Supp. 3d at 1271.  Denying both parties' motions for summary judgment, the court

identified a "genuine dispute of triable fact" about whether the defendant's "use of the photographs"—including for "solicit[ing] subscribers to its magazine"—"was consistent with" the licenses' "grant of permission . . . to make 'editorial' use of them." *Id.* at 1273, 1275. So the court held that even though the scope of a license defined permissible use—in *Boatman*, "editorial"; here, "as a mural"—a genuine dispute of material fact existed as to whether a particular use fell within the scope of that license. *See also Teter*, 723 F. Supp. 2d at 1154 (copyright owner granted "an implied license to display the copyrighted works on" a particular "website," but "a question [of] material fact" existed "as to whether" the defendant "exceeded the scope of the implied license by copying and reproducing [the] copyrighted works"). Here, too, "a jury could find for either party on the question of whether" Defendants "used" Letsch's photo "within the scope of a valid license, whether that license was express or implied." *Palmer/Kane LLC v. Gareth Stevens Publ'g*, No. 15-cv-7404 (GHW), 2017 WL 3973957, at *17 (S.D.N.Y. Sept. 7, 2017). So the Court cannot "resolve[]" that question "as a matter of law." *Id.*

The Court's prior holding about Letsch's ratification of Defendants' uses does not suggest otherwise. Agreeing with Defendants, the Court found that Letsch "provid[ed] an implied license" by "ratif[ying]" certain uses of her photo. ECF No. 45 at 19. And no genuine disputes of material fact prevented summary judgment, the Court reasoned, because the evidence established that "Letsch directed the public to Gypsy Kitchen's social media advertising in a" way that showed "consent" to Defendants' Atlanta-based marketing uses. *Id.* Letsch posted her photo on Instagram in 2020, explained that Gypsy Kitchen had used it as a mural, and "tagged" Gypsy Kitchen by including a link to the restaurant's social-media page. *Id.* She also linked to her "Behance" profile, which in turn showed an image of Gypsy Kitchen Atlanta with the mural. *Id.*

In hindsight, this analysis overread the effect of Letsch's conduct.  Recall the essence of an implied license: "a 'meeting of the minds' between the parties to permit the *particular usage* at issue."  *Psihoyos v. Pearson Educ., Inc.*, 855 F. Supp. 2d 103, 124 (S.D.N.Y. 2012) (citation omitted) (emphasis added).  When Defendants used images including the photo in marketing materials, they had permission to use the photo "as a mural."  As explained, the existence of that license does not eliminate genuine factual disputes about whether Defendants' specific uses fell within its scope.  Nor does the social-media conduct that the Court originally held created an implied license.

To start, Defendants seemingly used the photo in some marketing materials *before* Letsch posted in 2020, undermining the idea that the social-media activity showed a "meeting of the minds" as to particular uses that happened years earlier.  *See* ECF No. 37-26 at 3 (2016 Facebook post); *id.* at 9–11 (2016 and 2018 Facebook images); *id.* at 8, 12 (2015 promotional image apparently sent by email).  A license is about permitting uses that the licensor could otherwise prevent, so some courts reason that "a license or assignment in copyright can only act prospectively."  *Palmer/Kane LLC v. Rosen Book Works LLC*, 204 F. Supp. 3d 565, 579 (S.D.N.Y. 2016) (quoting *Davis v. Blige*, 505 F.3d 90, 104 (2d Cir. 2007)); *but compare Wu v. Pearson Educ. Inc.*, No. 10-cv-6537 (KBF), 2013 WL 145666, at *4 (S.D.N.Y. Jan. 11, 2013) ("[C]opyright licenses may be granted either prospectively or retroactively."), *with N. Jersey Media Grp. Inc. v. Pirro*, No. 13-cv-7153 (ER), 2015 WL 1086566, at *4 n.6 (S.D.N.Y. Mar. 9, 2015) (explaining that *Wu* relied on cases involving "retroactive licenses granted pursuant to negotiated settlements of infringement claims").  But even if an implied license could apply retroactively, Defendants have not shown "as a factual matter" that Letsch's conduct created such a "retroactive[]" license.  *Palmer/Kane LLC*, 204 F. Supp. 3d at 579.  At the very least, a reasonable jury could find that Letsch's post-use

conduct did not grant an implied license (beyond the original 2014 license) to use the photo as Defendants did.

And another problem: the evidence did not show beyond reasonable dispute that Letsch knew about Defendants' Atlanta-based marketing uses, so her social-media activity does not establish that she granted an implied license for them. "[M]ere acquiescence," after all, "is insufficient to" create "an implied license." *Flo & Eddie, Inc. v. Sirius XM Inc.*, 80 F. Supp. 3d 535, 539 (S.D.N.Y. 2015). And a jury could reasonably find that Letsch's conduct reflected *her* ownership of the photo and Defendants' *limited* ability to use of it as a mural. Her Instagram post, for example, shows only her photo. *See* ECF No. 33-20. The caption also explains that Defendants "used" the photo "*as a mural*"—not "in marketing materials." *Id.* (emphasis added). Further, because tagging an Instagram account is as easy as adding an "@" symbol before a username, this post does not show that "Letsch directed" people to the restaurant's advertising "in a manner that manifested consent" to those uses. ECF No. 45 at 19. Again, it is unclear what marketing uses Letsch knew about or when she might have known about them, so the Court placed too much weight on the caption. Nor does the link to Letsch's Behance profile support summary judgment. That profile again explains that the photo was "used as a mural in the restaurant." ECF No. 33-21 at 3–5. And one picture of the restaurant's interior does not "not conclusively establish" that Letsch manifested an "inten[t] for" Defendants "to use" the photo in its digital-marketing materials—at least not "without additional compensation" or permission from Letsch, as reflected in the invoice's request that Defendants contact her for all non-mural uses. *Atkins v. Fischer*, 331 F.3d 988, 993 (D.C. Cir. 2003) (finding genuine dispute of material fact on implied license); *see also* ECF No. 33-17.

In short, a jury could reasonably find that Letsch's conduct did—or did not—amount to an implied license for some—or all, or none—of Defendants' digital-marketing uses for the Atlanta restaurant. But that determination involves disputed factual questions that will turn on the jury's assessment of the particular use, its context, and Letsch's actions. Put differently, the Court cannot conclude as a matter of law that Letsch "clearly manifest[ed]" her "consent to" Defendants' marketing and promotional "use[s] of [her] copyrighted" photo just because she posted what she did in 2020. *MidlevelU*, 989 F.3d at 1216 (internal quotation marks and citation omitted). The "record" thus presents "a genuine issue of fact on the material issue of the intent of the parties" as applied to these uses, which "render[s] summary judgment inappropriate" on this "implied license issue." *Atkins*, 331 F.3d at 993.

Resisting this conclusion, Defendants argue that Letsch's "version of the implied license standard" is too strict. ECF No. 50 at 5. "Absent from this standard," they say, "is any requirement" that the copyright owner know about the "implied license use by the license holder." *Id.* at 4–5. And vice versa: the license holder need not know about the copyright "owner's conduct" that supposedly supports the implied license. *Id.* at 4. Nor, in Defendants' view, must that conduct have occurred "prior to the license holder's use." *Id.* at 5. But Defendants never explain how, absent some (or all) of those conditions, the parties could have had the "meeting of the minds" necessary for an implied license. *Bitmanagement Software GmBH v. United States*, 989 F.3d 938, 948 (Fed. Cir. 2021) (rejecting argument that such a "requirement does not exist"). Put differently, if Letsch didn't know how Defendants were using the photo—whether because the uses happened before her social-media activity or because she just hadn't seen them—how could her conduct show that she agreed to permit those uses? The question is "whether there was a 'meeting of the minds' between the parties to permit the *particular usage* at issue," so Letsch's knowledge of those

uses matters for determining whether she agreed to grant such permission. *Psihoyos*, 855 F. Supp. 2d at 124 (emphasis added) (citation omitted).[2]

To sum up: the Court clearly erred by granting summary judgment to Defendants on whether their Atlanta-based digital-advertising uses infringed Letsch's copyright. Genuine disputes of material fact remain as to whether those uses fall within the scope of the original license and whether Letsch's conduct expanded that license to cover them. So there are "good reasons" for granting Letsch's motion for reconsideration. *Lovely-Coley v. District of Columbia*, 255 F. Supp. 3d 1, 9 (D.D.C. 2017) (citation omitted). Thus, the Court will revise its earlier order and deny Defendants' motion for summary judgment on this point.

## IV.    Conclusion and Order

For all the above reasons, it is hereby **ORDERED** that Plaintiff's Motion for Reconsideration, ECF No. 47, is **GRANTED**. It is further **ORDERED** that the Court's Order granting in part and denying in part Plaintiff's and Defendants' motions for summary judgment, ECF No. 44, is **VACATED** to the extent it granted summary judgment to Defendants on the issue of Defendants' liability for infringement related to their Atlanta-based uses of the photo in digital materials for advertising, marketing, or promotional purposes. It is further **ORDERED** that the parties shall meet, confer, and file a joint status report by April 18, 2025, indicating how they wish to proceed with this case.

---

[2] Perhaps a copyright owner *could* act in ways that show her consent to particular uses such that her knowledge of those uses is not required. But this is not that case—or, more precisely, the Court cannot find as a matter of law that Letsch's actions support an implied license permitting Defendants' specific uses.

**SO ORDERED**.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: March 14, 2025